Kaufman and Broad, Inc., Appellant, *v.* Board of Supervisors of West Whiteland Township, Appellee.

118

Argued April 1, 1975, before President Judge Bow-
man and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Mencer and Blatt. Judge Rogers did not partici-
pate.

*Lenard L. Wolffe,* with him *Stanley A. Uhr, Marc D.
Brookman,* and *Pechner, Sacks, Dorfman, Rosen &
Richardson,* for appellant.

*William H. Lamb,* with him *John H. Wollman,* and
*Lamb, Windle & McErlane,* for appellee.

Opinion by Judge Mencer, July 2, 1975:

This is an appeal by Kaufman and Broad, Inc. (ap-
pellant), from an order of the Court of Common Pleas
of Chester County dismissing its appeal and sustaining

the West Whiteland Township Board of Supervisors' denial of a request for a curative amendment to the Township's zoning ordinance.

Appellant's challenge to the validity of the ordinance is based on an allegation that it is exclusionary and therefore invalid "for failing to provide for townhouse units, fourplex and condominium units." Pursuant to Section 1004(1)(b) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P. L. 805, *as amended,* 53 P.S. §11004(1)(b), appellant's challenge before the Board was accompanied by plans and other detailed material describing the intended use of the land in question as a possible Planned Residential Development (PRD), consisting of townhouses, fourplex units, and common recreational facilities, and by a proposed curative amendment to the ordinance containing extensive provisions for PRDs.[1]

After two hearings, the Board refused to accept either the plans or the curative amendment. The lower court affirmed, finding that townhouses did not represent a unique and distinct class of use that requires separate zoning provisions, that a townhouse is but one form of high density use, and that the ordinance already provided for high density uses.

Appellant then appealed to this Court, contending that the ordinance was unconstitutionally exclusionary

---

1. This was the appellant's correct procedure under the MPC. Unlike the situation in *Robin Corporation v. Board of Supervisors of Lower Paxton Township,* 17 Pa. Commonwealth Ct. 386, 332 A.2d 841 (1975), the appellant here is not challenging the ordinance *as being confiscatory as applied to its particular tract of land,* but rather is *attacking the whole ordinance as being exclusionary.* In fact, it is readily apparent that appellant's land is quite capable of supporting a number of reasonable permitted uses under the ordinance and therefore this cannot be considered as a disguised variance appeal. For an example of an appeal from exclusionary zoning see *Casey v. Zoning Hearing Board of Warwick Township,* Pa. , 328 A. 2d 464 (1974).

and that the proposed PRD amendment was a proper curative amendment under the circumstances. However, prior to oral argument, the Township stipulated, after considering our recent ruling in *Camp Hill Development Co., Inc. v. Zoning Board of Adjustment of the Borough of Dauphin*, 13 Pa. Commonwealth Ct. 519, 319 A. 2d 197 (1974), that the ordinance was unconstitutionally exclusionary when applied to townhouses. *See also Ellick v. Board of Supervisors of Worcester Township*, 17 Pa. Commonwealth Ct. 404, 333 A. 2d 239 (1975); *Northampton Township v. G.R.S.H., Inc.*, 14 Pa. Commonwealth Ct. 364, 322 A. 2d 758 (1974).

There was no stipulation concerning the issue of the exclusion of fourplex and condominium units in the Township. However, condominiums are not uses but are merely a method of expressing realty ownership. Condominium-type ownership is statutorily provided for under the Unit Property Act, Act of July 3, 1963, P. L. 196, *as amended*, 68 P.S. §700.101 et seq. This Act is inclusive enough to include townhouse uses as possibilities for condominium ownership, but a condominium cannot be a use itself.[2] Therefore, the subject of condominiums is not a proper subject to raise in these proceedings. If a use is permitted, the municipality cannot regulate the manner of ownership of the legal estate.

There is no evidence in the record to completely explain to us the definition of a fourplex unit. There also seems to be no established legal definition for this term of art. We are therefore compelled to remand this matter to the court below and suggest that the court remand the matter to the Board of Supervisors in order for them to construe the term "fourplex unit" and to decide

---

2. It is quite possible to have townhouses that are not condominiums and condominiums that are not townhouses. A condominium can be a multifamily, attached, semidetached, vertical, or horizontal building used for residential purposes, or for commercial or industrial purposes.

whether or not a fourplex unit is an excluded use under the ordinance, all within the guidelines of *Ellick, supra.*

The question remaining before us then is whether or not a Planned Residential Development amendment is the proper subject matter of a curative amendment submission under Secton 1004 of the Pennsylvania Municipalities Planning Code. We think that it is not.

This is the first time that this narrow question has reached the courts of this Commonwealth. In fact, there has been little construction of any of the provisions of Section 1004 since it was added in 1972. In his very able opinion in *Ellick v. Board of Supervisors of Worcester Township, supra,* Judge KRAMER undertook the first thorough examination of this entire section and its relationship to other old and new provisions of the MPC. The facts and issues in *Ellick* are quite similar to those presently before us, and we therefore rely heavily on Judge KRAMER'S analysis.[3]

Our scope of review in these cases is limited to a determination of whether or not the lower court abused its discretion or committed an error of law. *Ellick, supra.*

Section 1004 of the MPC does not provide any standards for curative amendment submissions. Neither are any words of limitation set forth in the curative amendment procedures described in Section 609.1, 53 P.S. §10609.1. However, it is a well-established principle of of law that "[e]very statute shall be construed, if possible, to give effect to all its provisions."[4] Section 702 of the MPC, 53 P.S. §10702, states: "The governing body of each municipality *may enact, amend and repeal* ordinances fixing standards and conditions for planned resi-

---

3. Like the present case, *Ellick* concerned a landowner's successful appeal under Section 1004(1)(b) of the MPC from an ordinance that allegedly excluded townhouses.

4. Statutory Construction Act of 1972, Act of November 25, 1970, P. L. 707, *as added* by the Act of December 6, 1972, P. L. 1339, 1 Pa. C.S. §1921.

dential development." (Emphasis added.) Unlike most of the MPC, this section and the other sections of Article VII (which deal exclusively with PRDs) of the MPC make it quite clear that the creation of a PRD section in an ordinance is left to the discretion of the township.[5] PRD provisions are not mandated by the MPC and no one can compel their enactment. They are therefore not the proper subject of a curative amendment.

Additionally, we find that appellant has been excessive by his curative amendment request. Although the proposed PRD amendment cures the zoning ordinance's defect of prohibiting townhouses, it also does much more. It provides for land uses and methods of land use, some of which are presently prohibited in the ordinance, or which cannot be combined under the ordinance, that were not challenged in the appellant's petition. While it is true that a submitted curative amendment need not *strictly* confine itself to merely remedying the allegedly unconstitutional provisions, we do find that under these circumstances appellant's detailed and all-encompassing 17-page PRD proposal goes too far. Clearly under these facts, a proposed curative amendment, providing merely for townhouses, would have been much more appropriate.[6]

Finally, we turn to Judge KRAMER'S analysis in *Ellick* where he reviewed the particular procedures employed in the submission and approval of curative amendments:

"In the instant case, Ellick chose to submit his challenge to the governing body. Section 1004, 53 P.S.

5. *See generally Abel v. Township of Middletown*, 51 Pa. D. & C. 2d 743 (1971), *aff'd on other grounds*, 7 Pa. Commonwealth Ct. 6, 297 A. 2d 525 (1972).

6. We of course are not setting any absolute limits for these submissions, as we believe that there is a definite need for flexibility in these cases. However, we do note that a simple general provision for townhouse uses and their accessory uses would have been appropriate and responsive here.

§11004, directs the governing body to hold a hearing to consider the challenge and request for a curative amendment. If the governing body determines that its ordinance is defective, it may amend the ordinance by accepting the proposed curative amendment, *or a variation thereof.* While recognizing the potential problems which may thus arise, we do not decide in this case what happens if the governing body adopts a curative amendment different from the one which was proposed by the landowner. We are quite certain, however, that the 1972 amendments to the MPC do not in any way interfere with the governing body's power to amend its zoning ordinance in a manner which the governing body believes will best further legally the public interest. To reiterate, *if it finds that its ordinance is defective, the governing body may choose to cure the defect by an amendment other than that proposed by the challenging landowner."* 17 Pa. Commonwealth Ct. at 411, 333 A. 2d at 244 (emphasis added).

Therefore, for the foregoing reasons, we conclude that appellant's curative amendment submission is overbroad. We cannot directly order its adoption.

Because of its decision denying the unconstitutionality of the ordinance, the Township necessarily has failed to pass any curative amendment. It cannot be compelled to pass the appellant's submission, but it should forthwith enact an amendment that will cure the defect in the ordinance. We cannot remand this matter so that the Board of Supervisors can exercise its legislative powers to enact a reasonable and proper curative amendment within a reasonable time. In so stating, we note two principles enunciated by Judge KRAMER in *Ellick*:

"Although section 1011 of the MPC, 53 P.S. §11011, gives the courts broad powers in this type of case, we do not believe that it gives the court any power to control the governing body's disposition of

the proposed curative amendment. As we read the 1972 amendments, the Legislature intended the proposed curative amendment to be merely an offer or suggestion to the governing body which will aid it in any attempt it may desire to make to cure a defective ordinance. The actual amending of the zoning ordinance is a purely legislative function which the courts have no power to direct. After the governing body acts in a manner not acceptable to the landowner, or refuses to act on a curative amendment, and the matter is appealed to the courts, the curative amendment is no longer a viable matter at issue before the court. It is the duty of the courts of common pleas to decide the purely legal question of whether the challenged zoning ordinance is legal or constitutional; but, if the court decides the ordinance is illegal or unconstitutional, it may not control the manner in which or the extent to which the ordinance is to be amended." 17 Pa. Commonwealth Ct. at 415, 333 A. 2d at 246.

"However, we must caution governing bodies that they cannot adopt or pass a curative amendment which would frustrate the challenging landowner, as was attempted in [Girsh Appeal, 437 Pa. 237, 263 A. 2d 395 (1970)]. See the recent opinion of our Supreme Court in Casey v. Zoning Hearing Board of Warwick Township, —— Pa. ——, 328 A. 2d 464 (1974)." 17 Pa. Commonwealth Ct. at 411, 333 A. 2d at 244.

We are still confronted with a rather perplexing problem. The appellant, by stipulation and pursuant to settled law, has obviously won its battle to declare the ordinance unconstitutionally exclusionary as to townhouses. Having overcome its intial burden, the appellant is now in a most favorable position. As Judge KRAMER stated:

"It is clear, under the 1972 amendments, that if a governing body determines that its ordinance is

defective, because it totally prohibits the use proposed by the challenging landowner, then the governing body must permit the challenging landowner to develop his land as proposed in the 'plans and other materials' submitted with the challenge, provided, of course, that what is submitted is reasonable, and not injurious to the public health, safety, welfare and morals. The governing body may not totally prohibit the successful challenger's proposed development nor may it subject the proposed development to unreasonable and burdensome restrictions. See Casey, supra. The governing body may, however, subject the landowner's submitted plans to reasonable restrictions as may be otherwise properly provided for in its ordinance. To put it another way, the successful challenger will still be required to abide by all of the reasonable building requirements, density restrictions, safety measures, sewage regulations, and water requirements, as well as all other reasonable zoning, building, subdivision and other regulations generally applicable to the class of use or construction proposed by the landowner. By class of usage here, we mean those classes which are usually found in zoning ordinances such as residential, agricultural, commercial, and industrial." *Ellick, supra* at 411-12, 333 A. 2d at 244-45.

Unfortunately, appellant has submitted plans that not only provide for townhouses but also provide for other uses that were not originally a part of appellant's appeal (namely, a PRD). It would thus seem unjust to allow it to develop its land in this manner. However, the rule has now been accepted that "[a] municipality with a defective ordinance runs the risk that a landowner will successfully challenge the ordinance and be permitted to proceed with a development which may be quite contrary to the intent of the governing body, its defective ordinance and the comprehensive plan." *Ellick, supra* at

417, 333 A. 2d 247. The limitation of reasonableness, previously expressed in *Ellick*, at 411-12, 333 A. 2d at 244-45, necessarily modifies the above. We therefore shall remand this issue to the lower court which shall exercise its broad supervisory powers in conformance with the above and with the following rules laid out in *Ellick*:

"If the court of common pleas determines that an ordinance is invalid as a matter of law, then it is the court's duty to review the governing body's action, if any, with respect to the 'plans and other materials' submitted with the landowner's challenge. As the Supreme Court noted in Casey, supra, the courts must go beyond mere invalidation and grant definitive relief. It would be grossly inequitable to reject a successful challenger's *reasonable development,* considering the time and effort which must be invested in such a challenge. Section 1011 of the MPC, 53 P.S. §11011; gives the court virtually unlimited power of review over the plans submitted. The court may order the plans submitted by the landowner approved as to all of its 'elements,' or order it approved as to some of them. It may refer some of the elements of the plans to the governing body and it may even disapprove the plan entirely. The court may even refer the 'plans and other material,' or parts thereof back to the governing body for disposition; but it may not remand, as we have noted, the challenge to the legality of the ordinance or the curative amendment. The court is directed by the statute to retain jurisdiction during the pendency of further proceedings and to issue, upon motion of the landowner, such supplementary orders as it deems necessary to protect the rights of the landowner.

"We do not believe the 1972 amendments require a court of common pleas to undertake any responsibility for changing the plans of the landowner by

order of court. In other words, *it is not the responsibility of the courts of common pleas to modify or redesign landowners' plans, but rather only to rule upon what is presented to the court.* We do not believe it would be proper for the court of common pleas to go beyond the record and formulate such reasonable zoning regulations as the court believes should be applicable. Rather we believe the *function of the court is to pass upon the reasonableness of the restrictions present in the record,* including both the restrictions contained in the landowner's plans and the restrictions present in the ordinance which are applicable to the same class of usage or construction. If the court finds that none of the restrictions present in the record are reasonable, then we believe the proper course would be to remand to the governing body for the formulation of reasonable restrictions, which would then be subject to review. In carrying out its responsibilities, the court of common pleas may order the landowner's plans, or portions of them, to be approved subject to the otherwise legal zoning regulations in the ordinance, (which has been found to be defective) which may be applicable to the same class of usage or construction. For example, if a court determines that an ordinance is defective because of total prohibition of townhouses, then it would be proper to approve the plan of the landowner subject to all of the other zoning regulations and provisions of the ordinance applicable to residential usage insofar as they are reasonably adaptable to townhouses.

"When considering successful challenges, lower courts will be forced to analyze zoning ordinances in order to determine which provisions of the ordinance are reasonably adaptable to the proposed plans. Once again, while we recognize that this is burdensome to the courts below, we must recognize that the

statute imposes this burden upon them. If the landowner believes that the determination of the lower court has resulted in an abuse of discretion or an error of law, the landowner then will be permitted to appeal to this Court for review. It also follows, of course, that if the governing body abuses its discretion in passing upon the plans after remand for that purpose, the challenging landowner will be permitted to appeal to the lower court." 17 Pa. Commonwealth Ct. at 415-17, 333 A. 2d at 246-47 (emphasis added).

Order of the Court of Common Pleas of Chester County reversed and this case remanded to said court to allow it to exercise its broad supervisory powers of review over the submitted plans of Kaufman and Broad, Inc., and for its remand to the Board of Supervisors of West Whiteland Township (a) to construe the term "fourplex unit"; (b) to determine whether or not fourplex units are unconstitutionally excluded uses under the ordinance; (c) to take such steps pursuant to the Municipalities Planning Code to implement any decisions concerning (a) and (b) as may be necessary.